**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DERRICK HAMILTON and SUEANNE HAMILTON, | CIVIL ACTION |
| Plaintiffs, | |
| v. | COMPLAINT  1:18-cv-01487 |
| LOANCARE, LLC and EQUIFAX INFORMATION SERVICES, LLC | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

**NOW COME** Derrick Hamilton ("Derrick") and Sueanne Hamilton ("Sueanne") (collectively, "Plaintiffs"), by and through their attorneys,  Sulaiman Law Group, Ltd., complaining of the Defendants, LoanCare, LLC ("LoanCare") and Equifax Information Services, LLC ("Equifax ") (collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring this action seeking redress for violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681, violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq., and violations of the Bankruptcy Discharge Injunction ("Discharge Injunction") pursuant to 11 U.S.C. §§524 and 105.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FCRA and FDCPA, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

1

3. The Court has subject matter jurisdiction over Plaintiffs' claims for violations of the Bankruptcy Discharge Injunction pursuant to 28 U.S.C. §1334.

4. The Court has supplemental jurisdiction over the state law ICFA claims under 28 U.S.C. §1367.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Northern District of Illinois and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

## PARTIES

6. Plaintiffs are consumers and natural persons over 18-years-of-age who, at all times relevant, resided in the Northern District of Illinois.

7. Defendant LoanCare is a Virginia limited liability corporation with headquarters in Virginia Beach, Virginia. LoanCare is in the business of sub-servicing defaulted mortgage loans owed to third parties. LoanCare sub-services mortgage loans extended to Illinois consumers. LoanCare is also a furnisher of credit information to the major credit reporting agencies, including Equifax.

8. Defendant Equifax is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. Equifax is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Illinois.

## BANKRUPTCY CASE

9. In January 2013, Sueanne executed a note and mortgage in the amount of $115,987 ("subject loan #1) in favor of United Security Financial Corporation ("United Security") secured by a property located at **236** N. Bertram Drive, Yorkville, IL ("subject property #1").

10. Also in January 2013, Derrick executed a note and mortgage in the amount of $124,343 ("subject loan #2) in favor of United Security secured by a property located **148** N. Bertram Drive, Yorkville, IL ("subject property #2").

11. Subject loans #1 and #2 (collectively, "subject loans") were subsequently transferred to Lenderlive Network, LLC ("Lenderlive").

12. Unfortunately for Plaintiffs, their financial health deteriorated and Plaintiffs defaulted on the subject loans.

13. On January 28, 2015, Plaintiffs filed a joint Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 15-02779 ("bankruptcy").

14. Schedule D of the bankruptcy petition listed subject loan #1, a secured pre-petition debt to Lenderlive, in the amount of $114,764 secured by subject property #1.

15. Schedule D of the bankruptcy petition also listed subject loan #2, a secured pre-petition debt to Lenderlive, in the amount of $122,637 secured by subject property #2.

16. On January 31, 2015, because Plaintiffs listed Lenderlive as a creditor, the Bankruptcy Noticing Center ("BNC") served Lenderlive with notice of Plaintiffs' bankruptcy filing and Plaintiffs' Original Plan.

17. Plaintiffs' Original Plan proposed to treat Lenderlive's claim with respect to subject loan #1 as follows:

> "Debtor is surrendering the real property located at 236 N. Bertram Drive, Unit N, Yorkville, Illinois to LenderLive Network, Inc., in full satisfaction of its claims."

18. Plaintiffs' Original Plan proposed to treat Lenderlive's claim with respect to subject loan #2 as follows:

> "Debtor is surrendering the real property located at 148 N. Bertram Drive, Unit N, Yorkville, Illinois to LenderLive Network, Inc., in full satisfaction of its claims."

19. On March 4, 2015, the 341 Meeting of Creditors was held with the Chapter 13 Trustee.

20. On March 27, 2015, Plaintiffs' Chapter 13 Plan was confirmed by the Honorable Donald R. Cassling.

21. Plaintiffs fully performed their duties and made all payments as set forth in their confirmed Chapter 13 Plan.

22. On September 8, 2015, the Bankruptcy Court entered an Order of Discharge in Plaintiffs' case of all dischargeable debts, including subject loan #1 and subject loan #2.

23. The Order of Discharge expressly stated:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the Debtor…The chapter 13 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged."

24. On or about September 10, 2015, the BNC served Lenderelive with the Order of Discharge.

25. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect on the subject loans by Lenderlive, or any other party.

26. Plaintiffs' personal liability on the subject loans were extinguished via their bankruptcy discharge, thus terminating their business relationship with Lenderlive, or any of its successors and assigns.

27. On March 14, 2016, Lenderlive sent Plaintiffs a correspondence advising them that effective April 1, 2016, the servicing rights to subject loan #1 and subject loan #2 were being transferred to RoundPoint Servicing, LLC ("RoundPoint").

4

28. Upon information and belief, RoundPoint received notice of Plaintiffs' bankruptcy discharge from its predecessor Lenderlive during the loan onboarding process.

29. RoundPoint serviced the subject loans from April 2016 to April 2017.

30. On April 13, 2017, RoundPoint sent Plaintiffs correspondences advising them that effective May 2, 2017, the servicing right to subject loans were being transferred to LoanCare.

31. Upon information and belief, LoanCare received notice of Plaintiffs' bankruptcy discharge from its predecessor RoundPoint during the loan onboarding process.

32. After the discharge injunction had taken effect, LoanCare sought to collect the subject loans from Plaintiffs personally by sending numerous dunning letters attempting to obtain payment on the subject loans.

33. The majority of the dunning letters itemized a "Past Due Amount" and "Amount Due" followed by a five figure balance. Moreover, the dunning letters stated that Plaintiffs **must** pay the past due amounts.

34. The majority of the dunning letters included a "Payment Due Date", instructed Plaintiffs on how to make payments to LoanCare, and included payment coupons that stated "Please make checks payable to" LoanCare.

35. The dunning letters also stated "this is a communication from a debt collector attempting to collect a debt."

36. Furthermore, the dunning letters threatened Plaintiffs with adverse credit reporting by stating "[w]e may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report."

37. LoanCare's collection efforts were highly confusing and upsetting to Plaintiffs as they were *again* led to believe that their bankruptcy had no legal effect and they were still obligated to pay

on the subject loans; which were the driving forces in Plaintiffs' decision to seek bankruptcy protection.[1]

38. All of LoanCare's collection efforts occurred with actual knowledge of Plaintiffs' bankruptcy filing and subsequent discharge.

39. Despite having actual knowledge of Plaintiffs' bankruptcy discharge, LoanCare brazenly sent dunning letters to Plaintiffs in an attempt to collect on subject loans.

40. Plaintiffs were unduly inconvenienced and harassed by LoanCare's unlawful attempts to collect the subject loans and suffered emotional distress and mental anguish as LoanCare's collection activities led them to believe they were still liable on the subject loans.

41. Concerned about the violations of their rights, Plaintiffs sought the assistance of counsel to permanently cease LoanCare's collection efforts.

42. Plaintiffs have expended time and incurred costs consulting with their attorneys as a result of LoanCare's false, deceptive, and misleading collection efforts.

### CREDIT REPORTING AND PLAINTIFFS' DISPUTE LETTERS

43. In August 2017, Plaintiffs discovered that LoanCare was reporting the subject loans to the credit reporting agencies as past due with six figure balances. Moreover, LoanCare was reporting derogatory post-discharge payment histories.

44. The reporting of the subject loans were inaccurate, incomplete, and materially misleading because the subject loans were discharged in Plaintiffs' bankruptcy on September 8, 2015, and

---

[1] Despite Plaintiffs' bankruptcy discharge, Plaintiffs have been victims of never-ending post-discharge collection efforts relating to the subject loans since October 2015. Specifically, Plaintiffs were compelled to file lawsuits against LoanCare's predecessors Lenderlive and RoundPoint seeking relief from post-discharge collection activity. Plaintiffs resolved their disputes with Lenderlive and RoundPoint through confidential settlements.

should be reporting with zero balances, zero past due amounts, zero monthly payment amounts, and no post-discharge derogatory information.[2]

### a. Plaintiffs' Dispute Letters to Equifax

45. On August 17, 2017, Sueanne sent a dispute letter to Equifax requesting that her credit file be updated to reflect that she was no longer liable on subject loan #1 by virtue of her bankruptcy discharge.

46. Sueanne's dispute letter to Equifax specifically referenced subject loan #1 (LoanCare tradeline) and contended that the reported status, balance, past due amount, and monthly payment amount were inaccurate and requested that Equifax investigate the errors in her credit file.

47. Sueanne's dispute letter further stated "I am asking for you to please update my credit report and reflect that I am no longer liable for the [LoanCare] account."

48. To support her dispute, Sueanne enclosed her bankruptcy Discharge Order, along with her social security card and driver's license (for verification purposes).

49. Also on August 17, 2017, Derrick sent a dispute letter to Equifax requesting that his credit file be updated to reflect that he was no longer liable on subject loan #2 by virtue of his bankruptcy discharge.

50. Derrick's dispute letter to Equifax specifically referenced subject loan #2 (LoanCare tradeline) and contended that the reported status, balance, past due amount, and monthly payment amount were inaccurate and requested that Equifax investigate the errors in his credit file.

---

[2] To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA"), in cooperation with the Credit Reporting Agencies, publishes a Credit Reporting Resource Guide for reporting data called the "Metro 2 Format." The CDIA instructs furnishers and CRAs to report a discharged debt with a $0 balance, a $0 past due amount, and a $0 monthly payment amount to reflect that the consumer is no longer liable on the discharged debt.

51. Derrick's dispute letter further stated "I am asking for you to please update my credit report and reflect that I am no longer liable for the [LoanCare] account.

52. To support his dispute, Derrick enclosed his bankruptcy Discharge Order, along with his social security card and driver's license (for verification purposes).

53. Plaintiffs sent their dispute letters to Equifax via certified mail, return-receipt requested.

54. Upon information and belief, LoanCare received notice of Plaintiffs' dispute letters from Equifax within five days of Equifax receiving Plaintiffs' dispute letters. *See* 15 U.S.C. §1681i(a)(2).

**b. Equifax's Failure to Correct Inaccurate Information in Sueanne's Credit File**

55. On September 18, 2017, Equifax responded to Sueanne's dispute letter by failing to properly investigate and correct the inaccurate reporting of subject loan #1 (LoanCare trade line).

56. Specifically, Equifax responded by stating that the LoanCare account has been updated to report as paid in full.

57. Despite Equifax's representations, subject loan #1 was still reporting as "over 120 days past due," 180+ days past due from June 2016 through February 2017, and that Sueanne was obligadeded to make a monthly payment amount of $865.

58. Moreover, Equifax failed to notate that Sueanne was disputing the information contained in the LoanCare trade line.

59. The reporting of subject loan #1 was patently inaccurate, incomplete, and created a materially misleading impression that Sueanne is still personally responsible for, delinquent, and obligated to pay a monthly payment on subject loan #1. However, Sueanne was no longer personally liable on the subject loan #1 by virtue of her bankruptcy discharge.

### c. Equifax's Failure to Correct Inaccurate Information in Derrick's Credit File

60. On September 19, 2017, Equifax responded to Derrick's dispute letter by failing to properly investigate and correct the inaccurate reporting of subject loan #2 (LoanCare trade line)

61. Specifically, Equifax responded by stating that Derrick's "bankruptcy is currently reporting as discharged" and that LoanCare has verified the disputed information.

62. Despite Equifax's representations, subject loan #2 was not reporting as "discharged" and was still reporting as "over 120 days past due" and 120+ days past due from June 2016 through August 2017.

63. Moreover, Equifax failed to notate that Derrick was disputing the information contained in the LoanCare trade line

64. The reporting of subject loan #2 was patently inaccurate, incomplete, and created a materially misleading impression that Derrick is in default and still liable for subject loan #2. However, Derrick was no longer personally liable on subject loan #2 by virtue of his bankruptcy discharge.

### IMPACT OF CONTINUING
### INACCURATE INFORMATION IN PLAINTIFFS' CREDIT FILES

65. The erroneous reporting of the subject loans continues to paint a false and damaging image of Plaintiffs.

66. The entire experience has imposed upon Plaintiffs significant distrust, frustration, distress, and has rendered Plaintiffs helpless as to their ability to regain a firm foothold on their creditworthiness, credit standing, credit capacity, and their ability to move forward after their bankruptcy discharge.

67. The inaccurate reporting of the subject loans had significant adverse effect on Plaintiffs' credit ratings because it creates a false impression that Plaintiffs are in default and obligated to pay on subject loan #1 and subject loan #2, rendering them high risk consumers and damaging their creditworthiness.

68. As a result of the conduct, actions, and inaction of Defendants, Plaintiffs have suffered various types of damages as set forth herein, including specifically, the loss of credit opportunities, the loss of ability to benefit from credit, and other frustration and aggravation associated with having inaccurate information in their credit files, time and money expended consulting with their attorneys, tracking the status of their disputes, monitoring their credit files, and mental and emotional pain and suffering.

69. Due to the conduct of Defendants, Plaintiffs were yet again forced to retain counsel to remove the inaccuracies in their credit files. *See* ¶37, Footnote 1.

### COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(PLAINTIFFS AGAINST LOANCARE)

70. Plaintiffs restate and reallage paragraphs 1 through 69 as though fully set forth herein.

71. Plaintiffs are "consumers" as defined by 15 U.S.C. §§1681a(b) and (c).

72. Plaintiffs are "persons" as defined by 15 U.S.C. §1681a(b).

73. LoanCare is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

74. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

75. LoanCare violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct investigations with respect to the disputed information after receiving requests for investigations from Equifax.

76. LoanCare violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax pursuant to 15 U.S.C. §1681i(a)(2).

77. Had LoanCare reviewed the information provided by Equifax and Plaintiffs, it would have corrected the inaccurate information pertaining to the subject loans and transmitted the correct information to Equifax. Instead, LoanCare erroneously confirmed its inaccurate reporting without conducting reasonable investigations.

78. LoanCare violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the complete results of the investigations or reinvestigations of Plaintiffs' disputes to Equifax.

79. LoanCare violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigations or reinvestigations to Equifax after being put on notice and discovering inaccurate, incomplete, and misleading reporting with respect to the subject loans.

80. LoanCare violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information from appearing and reappearing in Plaintiffs' credit files.

81. LoanCare failed to conduct reasonable investigations of its reporting of the subject loans, record that the information was disputed, and/or delete the inaccurate reporting from Plaintiffs' credit files within 30 days of receiving notice of the disputes from Equifax.

82. Despite the blatantly obvious errors in Plaintiffs' credit files, and Plaintiffs' efforts to correct the errors, LoanCare did not correct the errors or the trade lines to report accurately and completely. Instead, LoanCare erroneously furnished and re-reported the inaccurate, incomplete and misleading information after Plaintiffs' disputes to one or more third parties.

83. Moreover, LoanCare failed to report the subject loans as discharged in bankruptcy and failed to notate that Plaintiffs disputed the reporting of subject loan loans.

84. A reasonable investigation by LoanCare would have confirmed the veracity of Plaintiffs' disputes, yet the inaccurate information continues to report in Plaintiffs' credit files.

85. Had LoanCare taken steps to investigate Plaintiffs' valid disputes or Equifax's requests for investigations, it would have permanently corrected the erroneous, incomplete, and materially misleading credit reporting. Furthermore, Plaintiffs' bankruptcy information is public record that is widely available and easily accessible.

86. By deviating from the standards established by the mortgage servicing industry and the FCRA, LoanCare acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

**WHEREFORE,** Plaintiffs DERRICK and SUEANNE HAMILTON respectfully pray this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Award Plaintiffs actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

c. Award each Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

d. Award Plaintiffs punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

e. Award Plaintiffs costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

f. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
#### (PLAINTIFFS AGAINST EQUIFAX)

87. Plaintiffs restate and reallege paragraphs 1 through 69 as though fully set forth herein.

88. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

89. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

90. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

91. At all times relevant, Plaintiffs were "consumers" as the term is defined by 15 U.S.C. §1681a(c).

92. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

93. The FCRA requires the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

94. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

95. Equifax prepared Plaintiffs' credit reports containing inaccurate, incomplete, and materially misleading information by reporting the subject loans with outstanding balances, past due amounts, scheduled monthly payment amounts, and derogatory post-discharge payment histories and account history delinquencies, when in fact Plaintiffs had received a bankruptcy discharge, owed no balances, were not past due, and owed no scheduled payment amounts on the subject loan.

96. Moreover, Equifax failed to report the LoanCare trade lines as discharged in bankruptcy.

97. Equifax violated 15 U.S.C. §1681c(f) by failing to notate that Plaintiffs disputed the reporting of the subject loans. Equifax is required to notate each account that a consumer disputes in each consumer report that includes the disputed information.

98. A simple review of the relevant documents submitted by Plaintiffs would have confirmed that Plaintiffs had obtained a bankruptcy discharge and were not liable on the subject loans.

99. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiffs. Upon information and belief, Equifax prepared patently false, incomplete, and materially misleading consumer reports concerning Plaintiffs. Equifax was provided notice of Plaintiffs' bankruptcy discharge through Plaintiffs themselves nd its public information vendor Lexis Nexis. Accordingly, Equifax had actual knowledge that Plaintiffs were not liable on the subject loans yet continued to report the subject loans as in default and due and owing.

100. Equifx violated 15 U.S.C. §1681i(a)(1) by failing to conduct reasonable investigations to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiffs' credit files.

101. Had Equifax taken any steps to investigate Plaintiffs' valid disputes, it would have determined that the subject loans were discharged in Plaintiffs' bankruptcy on September 8, 2015.

102. Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide adequate notification of Plaintiffs' disputes to LoanCare. Upon information and belief, Equifax failed to include all relevant information as part of the notices to LoanCare regarding Plaintiffs' disputes that Equifax received from the Plaintiffs.

103. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiffs and LoanCare with regard to the subject loans.

104. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiffs' disputes.

105. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from LoanCare that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiffs. The lack of notice and correction caused Plaintiffs to pull their credit multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Plaintiffs' credit worthiness and credit scores.

106. Since all of Plaintiffs' other accounts were reporting as "$0 balance owed," "included in bankruptcy," or "discharged," Equifax should have investigated why the LoanCare trade lines were reporting anything other than a $0 balance amount, a $0 past due amount, or a $0 monthly payment amount.

107. Moreover, after Plaintiffs' written detailed disputes, Equifax had specific information related to Plaintiffs' bankruptcy case, and subsequent discharge order, which included the subject loans.

108. Additionally, Equifax had notice that the subject loans were in a perpetual state of dispute because Plaintiffs previously disputed the reporting of the subject loans with Equifax while the subject loans were serviced by Lenderlive and RoundPoint. *See* ¶37, Footnote 1.

109. Equifax knew that the inaccurate reporting of the subject loans in Plaintiffs' credit files under the LoanCare trade lines as delinquent, in default, and with  high balances after their

bankruptcy discharge would have a significant adverse effect on Plaintiffs' credit worthiness and ability to receive a "fresh start" after completing their bankruptcy.

110. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

111. Despite actual knowledge that Plaintiffs' credit files contained erroneous information, Equifax readily sold Plaintiffs' inaccurate, incomplete, and misleading reports to one or more third parties, thereby misrepresenting facts about Plaintiffs and, ultimately, Plaintiffs' creditworthiness.

112. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

113. It is Equifax's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

114. Equifax's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiffs' credit files and reporting their credit information.

115. Equifax acted reprehensively and carelessly by reporting and re-reporting Plaintiffs as continually delinquent, in default, and owing a high past due balance on the subject loans after Plaintiffs received a bankruptcy discharge.

116. Equifax has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false, incomplete, and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

117. As stated above, Plaintiffs were severely harmed by Equifax's conduct.

**WHEREFORE**, Plaintiffs DERRICK and SUEANNE HAMILTON respectfully pray this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Award Plaintiffs actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

c. Award each Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

d. Award Plaintiffs punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiffs costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

f. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT III- VIOLATIONS OF THE DISCHARGE INJUNCTION
### (PLAINTIFFS AGAINST LOANCARE)

118. Plaintiffs restate and reallege paragraphs 1 through 69 as though fully set forth herein.

**a. 11 U.S.C. §524(a)(2)**

119. Pursuant to 11 U.S.C. §524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts.

120. "Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.,* 239 F.3d 910, 915 (7th Cir. 2001).

121. Punitive damages may be awarded for violations of the bankruptcy discharge, and are especially appropriate when a party acts in "clear disregard and disrespect of the bankruptcy laws." *In re Vazquez*, 221 B.R. 222, 231 (Bankr. N.D. Ill. 1998). Punitive damages of four to ten times the amount of compensatory damages may be appropriate for willful violations of the bankruptcy injunction. *Id.*

17

### b. LoanCare's collection attempts were willful

122. LoanCare violated the discharge injunction by willfully attempting to collect the subject loans with actual knowledge of Plaintiffs' bankruptcy and the discharged status of the subject loans.

123. Upon information and belief, LoanCare's loan onboarding department reviewed its predecessor RoundPoint's records at the time of transfer of servicing rights and discovered that the subject loans were discharged. Despite having actual knowledge of the discharged status of the subject loans, LoanCare initiated efforts to collect on the subject loans.

124. Moreover, upon information and belief, LoanCare had knowledge that the subject loans had been subject to previous litigation involving post-discharge collection activity and thus should have flagged the subject loans to prevent further collection activity.

125. LoanCare should have implemented procedures and trained its employees in order to discourage and also prevent willful and wanton violations of the Bankruptcy Code.

126. LoanCare's conduct demonstrates that it has no such system in place to protect the rights of consumers protected by the Bankruptcy Code.

127. Based on the black letter of the Bankruptcy Code, LoanCare willfully sought to collect the subject loans from Plaintiffs in violation of the discharge injunction, thus warranting sanctions and punitive damages to deter future conduct of a similar nature.

**WHEREFORE**, Plaintiff DERRICK and SUEANNE HAMILTON requests that this Honorable Court:

a. Hold LoanCare in civil contempt of the Order or Discharge pursuant to 11 U.S.C. §§524 and 105;

b. Order LoanCare to compensate Plaintiffs for their actual damages in an amount to be determined by the Court as a result of its civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

c. Order LoanCare to pay punitive damages in an amount to be determined by the Court for its civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

d. Order LoanCare to pay Plaintiffs' reasonable legal fees and expenses for violations of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105; and

e. Provide such other and further relief as the Court may deem just and proper.

<u>COUNT IV – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT</u>
(PLAINTIFFS AGAINST LOANCARE)

128. Plaintiffs restate and realleges paragraphs 1 through 69 as through fully set forth herein.

129. Plaintiffs are "persons" and "consumers" as defined in ICFA, 815 ILCS 505/(c) and (e) respectively.

130. LoanCare is engaged in commerce in the State of Illinois with regard to Plaintiffs, the subject loans, and the subject properties. LoanCare specializes in mortgage servicing and debt collection, which are activities within the stream of commerce and utilized in their regular course of business.

131. The Illinois Consumer Fraud and Deceptive Business Practices Act states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

**a. Unfairness**

132. LoanCare violated 815 ILCS 505/2 by engaging in unfair and deceptive acts or practices by using fraud, deception, and misrepresentations in its attempt to collect the subject loans after Plaintiffs' bankruptcy discharge.

133. LoanCare's demands for payment on the subject loans, which were duly scheduled and subsequently discharged in Plaintiffs' bankruptcy, represents the use of false pretenses and

misleading communication to attempt to collect debts that were not owed at the time the demands for payment were made.

134. It was unfair for LoanCare to mislead Plaintiffs into believing that the subject loans are still owed, when in fact they were not owed by virtue of Plaintiffs' bankruptcy discharge.

135. It was unfair for LoanCare to attempt to collect the subject loans from Plaintiffs through constant dunning letters and derogatory credit reporting.

136. It was unfair for LoanCare to attempt to deceive Plaintiffs into making payments on uncollectible debts by repeatedly sending Plaintiffs dunning letters.

137. LoanCare's collection efforts were oppressive because Plaintiffs had no meaningful choice other than to submit to the dunning letters and derogatory credit reporting.

138. Moreover, LoanCare's collection efforts are against public policy because they frustrated Plaintiffs' fresh start after emerging from a successful bankruptcy filing.

### b. Deception

139. LoanCare's demands for payment on the subject loans represent the use of deception, fraud, and false pretense in an attempt to collect a debt because the debts were not owed at the time the demands for payment were made.

140. LoanCare's demands were deceptive because they were systematically designed to mislead Plaintiffs into believing that the subject loans were owed, when in fact the subject loans were discharged in Plaintiffs' bankruptcy on September 8, 2015.

141. LoanCare's demands for payment were systematically calculated to induce payment on debts that were no longer owed.

142. Such deceptive conduct is harmful to Illinois consumers as it can result in Illinois consumers paying debts that are not owed.

143. Upon information and belief, attempting to collect debts discharged in bankruptcy from Illinois consumers is an unfair and deceptive business practice willfully employed by LoanCare and is done on a mass scale.

144. As pled above, Plaintiffs have suffered significant damages as a result of LoanCare's unlawful collection practices.

145. An award of punitive damages is appropriate because LoanCare's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of Plaintiffs and consumers, generally, and Plaintiffs had no choice but to submit to the continued dunning letters and derogatory credit reporting.

**WHEREFORE**, Plaintiff DERRICK and SUEANNE HAMILTON request that this Honorable Court:

a. Enter judgment in Plaintiffs' favor and against LoanCare;

b. Award Plaintiffs their actual damages in an amount to be determined at trial;

c. Award Plaintiffs punitive damages in an amount to be determined at trial;

d. Award Plaintiffs reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and

e. Award any other relief their Honorable Court deems equitable and just.

### COUNT V – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
(PLAINTIFFS AGAINST LOANCARE)

146. Plaintiffs restate and reallege paragraphs 1 through 69 as though fully set forth herein.

147. Plaintiffs are "consumers" as defined by FDCPA §1692a(3).

148. The subject loans are "debts" as defined by FDCPA §1692a(5) as they arose out of a transaction due or asserted to be owed or due to another for personal, family, or household

purposes. Specifically, the subject properties both served as Plaintiffs' principal residences at the time they were purchased.

149. LoanCare is a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

150. LoanCare is a "debt collector" because it began servicing the subject loans when they were in default. 15 U.S.C. §1692a(6).

151. LoanCare's communications to Plaintiffs were made in connection with the collection of the subject loans/debts.

152. Section 524(a)(2)-(3) of the Bankruptcy Code, commonly known as the "discharge injunction," prohibits "an act, to collect, recover or offset any such debt as a personal liability of the debtor," and "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor." 11 U.S.C. §§524(a)(2)-(3).

153. LoanCare violated 15 U.S.C. §§1692e(2), e(8), e(10), f, and f(1), through its debt collection efforts on debts discharged in bankruptcy.

**a.  Violations of  FDCPA § 1692e**

154. LoanCare violated §1692e(2) when it misrepresented the character, amount, or legal status of the subject loans. The subject loans were not owed at the time LoanCare demanded payment of the subject loans because they were discharged in Plaintiffs' Chapter 13 bankruptcy. Specifically, Plaintiffs did not have any legal or personal obligation to pay LoanCare after Plaintiffs' bankruptcy discharge on September 8, 2015.

155. LoanCare violated §1692e(8) by communicating false credit information to Equifax that it knew, or should have known, to be false by inaccurately reporting balances, scheduled payment

amounts, and multiple post-discharge delinquencies. This information regarding the subject loans were inaccurate and misleading because the subject loans were discharged and therefore Plaintiffs had no further obligations to LoanCare upon entry of their discharge.

156. 15 U.S.C. §1692e(8) also requires a debt collector to disclose the fact that a debt is disputed.

157. LoanCare violated §1692e(8) when it failed to designate its trade lines as disputed after receiving notice of Plaintiffs' disputes from Plaintiffs and Equifax.

158. LoanCare had actual knowledge that information regarding the subject loans was disputed because it received notices of Plaintiffs' disputes from Plaintiffs and Equifax.

159. Moreover, LoanCare obtained information from its predecessor RoundPoint during the loan onboarding process that information regarding the subject loans was in dispute yet LoanCare continued to transmit false information regarding the subject loans to the credit reporting agencies without notating that Plaintiffs were disputing information relating to the subject loans.

160. LoanCare violated §1692e(10) when it used false representations and/or deceptive means to collect and/or attempt to collect the subject loans. The subject loans were not owed at the time LoanCare demanded payment by virtue of Plaintiffs' bankruptcy discharge.

**b.   Violations of  FDCPA § 1692f**

161. LoanCare violated §1692f when it used unfair and unconscionable means to collect the discharged subject loans. The subject loans were not owed at the time LoanCare demanded payment by virtue of the discharge injunction. Plaintiffs did not have any legal obligation to pay LoanCare after Plaintiffs' bankruptcy discharge on September 8, 2015. Instead, LoanCare tried to deceive Plaintiffs into making payments by trying to convince them that the subject loans were still owed.

23

162. LoanCare violated §1692f(1) by attempting to collect debts that were uncollectible as a matter of law as the discharge injunction precludes collection of discharged debts. Specifically, Plaintiffs did not have any legal obligation to pay LoanCare after Plaintiffs' Chapter 13 discharge.

163. LoanCare attempted to coerce and induce Plaintiffs into paying debts that were not legally owed.

164. As an experienced mortgage servicer and debt collector, LoanCare knew or should have known the ramifications of collecting on debts that were discharged in bankruptcy.

165. LoanCare knew or should have known that Plaintiffs' discharged debts were uncollectable as a matter of law.

166. Upon information and belief, LoanCare has no system in place to identify and cease collection of debts discharged in bankruptcy.

**WHEREFORE**, Plaintiffs DERRICK and SUEANNE HAMILTON respectfully pray this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Award the Plaintiffs statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c. Award the Plaintiffs costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

d. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiffs demand trial by jury.**                              Respectfully Submitted,

/s/ Mohammed O. Badwan

Mohammed O. Badwan, Esq.
*Counsel for Plaintiffs*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Ste. 200
Lombard, IL 60148
Phone: (630) 575-8180
mbadwan@sulaimanlaw.com

24